UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 15-154 |
| DAMIAN BARNES | * | SECTION: A |

\* \* \* \* \* \* \*

**DEFENDANT DAMIAN BARNES MEMORANDUM
IN SUPPORT OF HIS MOTION TO PROHIBIT USE OF
CERTAIN DOCUMENTS AND TANGIBLE OBJECTS
AND TO PROVIDE EXCULPATORY EVIDENCE**

**NOW INTO COURT** comes defendant Damian Barnes, appearing herein through undersigned counsel, who respectfully provides this memorandum in support of his Motion to Prohibit Use of Certain Documents and Tangible Objects and to Provide Exculpatory Evidence.

Rule 16(d)(2) gives the Court wide discretion in dealing with the failure of either party to comply with the discovery procedures of Rule 16. The Court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. Rule 16(d)(2), Fed. R. Crim. P.

As pointed out by counsel for Terrioues Owney in her Motion to Compel Discovery (R. Doc. 204), despite repeated requests for physical corroborating evidence that the defendants committed the specifically charged crimes, the government has not provided any physical evidence, apart from a general disc provided to all counsel on August 4, 2015 (*Id.*, Exhibit B).

1

2580625-1

With respect to Damian Barnes, the disc did contain specific *Brady* material, namely a NOPD report that listed the name and verbatim statement of an exculpatory eye-witness to the murder of Floyd Moore. Upon undersigned counsel's request, the government courteously provided counsel with a color copy of the photo lineup sheets wherein that witness identified another person as being the shooter of the victim Floyd Moore. Ironically, the person he identified is a relative of co-defendant Terrioues Owney. The disc also contains some criminal history sheets and arrest reports of some current and prior co-defendants, photos of the victim, and an autopsy report. But in short, there is *no physical evidence whatsoever* that links, tends to indicate, or corroborates that Damian Barnes either sold heroin or participated in the murder of Floyd Moore.

Counsel, of course, understands that certain named and/or unnamed coconspirators will testify that Barnes both sold drugs and shot Floyd Moore. But what physical evidence is there to corroborate the testimony of such inherently unreliable people? Without such, undersigned counsel is in a quandary. He has been counsel in this case since July, but to date has been unable to advise his client what the evidence is against him. Counsel is totally unable to prepare for trial because counsel simply has no inculpatory evidence to analyze. Counsel cannot even advise his client whether it is in his best interests to plead guilty. Rather, the *only* evidence that undersigned counsel has received from the government specifically indicates that Barnes did *not* commit the murder of Floyd Moore.

If in fact there are any relevant and possibly prejudicial statements made by Damian Barnes, whether written or otherwise recorded, the government, for its failure to provide, should be prohibited from using such at trial. *See e.g. United States v. Smith*, 557 F.2d 1206, 1210 (5th Cir. Fla. 1977)(conviction upheld because this was *not* a case where the government secreted

statements that could impeach the defendant).  For example, counsel was shown by government counsel a video-recording of a rap song wherein Barnes is allegedly holding a gun. That recording, per the government's representations, is a "statement" of criminal intent by Barnes and will so be used by the government in its case-in-chief. Although undersigned counsel has orally asked the government for a copy of this video recording, to date the government has not provided counsel with a copy of the video recording for his inspection, analysis, and possible submission to a defense expert.

The government alleges that from "2010 through May 2011, Gregory Stewart sold Damian Barnes seven grams of heroin for $500 approximately two times per week." Are there wiretaps or other recorded statements, cell records, historical cell tower location records, pole cameras, surveillance logs, or *anything* for that matter to corroborate what obviously will be the testimony of Gregory Stewart? Counsel has no way of knowing because he has never been provided with such, let alone an answer as to whether such exists.

The government alleges that "on April 28, 2011, Gregory Stewart, Washington McCaskill, and Damian Barnes shot and killed Floyd Moore, who was believed to be an associate of the Calliope Housing Project gang." Once again, apart from the testimony of the two named coconspirators, is there *anything* to corroborate that Barnes shot and killed Floyd Moore? An eyewitness says Barnes did not commit this crime. Ironically, this eye witness was a law enforcement officer. But apart from interviewing the exculpatory witness, how is counsel supposed to prepare to defend against inculpatory evidence if the government does not provide such?

As matters stand now, Damian Barnes and counsel are unable to understand the specific acts of which he is accused and will not be able to adequately prepare his defense without the

requested information. Counsel never asked for a Bill of Particulars; rather counsel merely has asked for the basic discovery requirements of Rule 16.

If the government replies that none of this requested physical evidence exists, then the philosophy and spirit behind *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215 (1963), should trump. As aptly noted by counsel for Terrioues Owney in her Motion to Compel Discovery (R. Doc. 204), *Brady* is a constitutional mandate that exceeds the minimum that a prosecutor must do. At the moment the government is claiming that any possible contradictory statements by the testifying cooperators fall under the provisions of *Jencks* and *Giglio*, and thus it need not supply such to the defense except shortly before trial. Following this same logic, the government is maintaining the position that the factual basis of codefendants Tyrone Knockum and Washington McCaskill should remain under seal. The government claims that revealing the factual basis would put these two in legitimate fear of their lives. But to say that they are in fear of life does not hold water. It is the mere *fact* of cooperation rather than the *details* of that cooperation that is of relevance and materiality to the legitimate fear of life argument.

The reasoning outlined by counsel for Terrioues Owney in her motion to compel and by counsel for Jasmine Perry in his motion for grand jury transcripts, explains the fundamental unfairness that will permeate this case if the government is allowed to get away with its tactic of characterizing its witnesses' (most likely contradictory) statements as *Jencks* and *Giglio* rather than as *Brady*. Counsel is now faced "with the very real possibility of not receiving any evidence against [the defendants] until the Friday before trial." (R. Doc. 204). In other words, counsel will be facing trial by ambush in a case where a guilty verdict will result in a life sentence. This, without a doubt, consists of a clear prejudice to the defendant's substantial rights. *See e.g.*

*Hansen v. United States*, 393 F.2d 763, 769 (5th Cir. 1968) (where evidence merely *supplemented* the documents previously given to defendant, clear prejudice was not shown).

Because the stakes in this case are so high (life imprisonment), undersigned counsel respectfully submits that if any physical evidence does indeed exist (such as the rap video), then the Court should exercise its inherent discretionary power to send a message to the government that such dilatory tactics are not acceptable. The government should be held accountable for not timely turning any physical evidence over to the defense. The logical sanction is to prohibit the government from using at trial any such physical evidence, assuming its existence. Fed. R. Crim. P. 16(d)(2)(C) ("If a party fails to comply with this rule, the court may prohibit that party from introducing the undisclosed evidence"). *See e.g. Hansen v. United States*, 393 F.2d at 769 ("We think either Hansen or the Court should have been advised of the evidence in advance of trial, but the application of sanctions and the admission of the evidence were discretionary matters for the Court . . . [a]s pointed out by Hansen a criminal proceeding is not a sporting event. The purpose of a trial is to ascertain the truth.").

**WHEREFORE**, in order to ensure adequate preparation for trial and to prevent unfair surprise, the defendant requests that his Motion to Prohibit Use of Certain Documents and Tangible Objects and to Provide Exculpatory Evidence be granted.

    Respectfully submitted,

    /s/ Peter G. Strasser
    Peter G. Strasser, #19169
    CHAFFE McCALL, L.L.P.
    1100 Poydras Street
    2300 Energy Centre
    New Orleans, LA 70163-2300
    Telephone: 504.585.7231
    Facsimile: 504.585.7075
    E-mail: strasser@chaffe.com
    **Attorney for Defendant Damian Barnes**

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2015, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Peter G. Strasser.*