## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION NO. 2:15-cr-154** |
| | **SECTION A (3)** |
| **VERSUS** | |
| | **JUDGE JAY C. ZAINEY** |
| **JASMINE PERRY, ET AL** | **MAGISTRATE JUDGE DANIEL E. KNOWLES, III** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF
### EMERGENCY MOTION TO COMPEL PRODUCTION

**MAY IT PLEASE THE COURT:**

Defendant Jasmine Perry, through undersigned counsel, respectfully requests that this Honorable Court immediately compel the Government to produce improperly withheld *Brady* and/or Jencks/*Giglio* materials.

### I.    Background

The Court has had a standing order in this case that anything arguably *Brady* in nature must be produced on an immediate and ongoing basis. (Rec. Doc. 326). At a status conference held on February 4, 2016, the Court set the deadline for production of Jencks Act and *Giglio* materials for August 22, 2016. (Rec. Doc. 280). Subsequently, expressing witness safety concerns, the Government sought and was granted an extension on production of Jencks/*Giglio* material. The Court stated that the Government was to produce these materials no later than August 31, 2016 at 4:00PM. (Rec. Doc. 535).

Notwithstanding these orders, and the defendants' knowledge that Gregory Stewart (aka the "Rabbit") was the Government's star witness, the Government has continued to withhold *Brady* and Jencks/*Giglio* material and apparently continues to withhold information critical to

Perry's defense in this matter.[1]   In short, despite knowledge of multiple meetings between Stewart and the Government regarding this matter, Perry has been provided a summary 302 report from August 18, 2016.  Jasmine Perry now moves for immediate production of withheld materials, including notes of the interviews with Stewart and other cooperating witnesses.

## II.    Stewart's Guilty Plea in 11-107 and Subsequent Cooperation

Gregory Stewart was arrested in the 11-107 case on June 21, 2011, and formally indicted on June 30, 2011.  Stewart later pled guilty to the 11-107 drug and firearms conspiracies and murders of Quelton Broussard, Calvin Celestine, and Gregory Keys.  In return, Stewart was granted immunity for his involvement in nine other murders.

The watershed moment for Stewart's cooperation  in this case was between February 19 - 26, 2013.  It was then, according to Stewart, that he wanted to "come clean" and "stop playing games" with the Government.  Between those dates, Stewart circumvented his own attorney and placed jailhouse calls to FBI agents requesting a meeting with Assistant U.S. Attorney Maurice Landrieu.  However, after February 2013, the Rabbit's cooperation trail ends.  Since Stewart's February 2013 decision to become a cooperating witness, the Government has only produced a summary 302 report from August 18, 2016, even though the Government has stated on the record that it has conducted numerous, substantial interviews with Stewart between 2013 and 2016. Other than the August 18, 2016 302 report, the Government has not produced any other 302 reports, agent notes, transcripts, or any other documentation of interviews between Gregory Stewart and the Government regarding the 39ers Federal RICO indictment.

A timeline of the information produced is helpful to demonstrate the injustice in this case:

---

[1] It also appears that the Government has withheld additional notes, 302s and other documentation regarding other cooperating witnesses, including Darryl Franklin, Washington McCaskill, Rico Jackson, and Tyrone Knockum.

- June 1, 2012: Stewart proffer in case 11-107 wherein Stewart fabricates a story regarding Counts 39-42 of the current indictment.  (Exhibit A)

- February 19-February 26, 2013: Stewart makes multiple calls to FBI from jail. FBI asks if he is ready to stop "playing games."  Stewart states he is ready to "come clean." (Exhibit B)

- August 18, 2016: Summary 302 of Stewart's interviews with Government "on several occasions" and "prior statements." (Exhibit C)

### III.     Improperly Withheld Discovery is Material Considering Stewart's Past

This brief timeline shows how egregious the Government's production of *Brady* and Jencks/*Giglio* material has been in this case, especially in light of the fact the indictment, which was established based on information provided to the Government by Stewart, was issued on June 12, 2015.  The insufficiency of the Government's productions is further magnified by its statements in 2015 that Stewart has been "very cooperative" in this case, which the Government has a "very big interest in…."  (Exhibit D).  Indeed, on July 15, 2015, at a restitution hearing in case 11-107, Mr. Landrieu stated to the Court:

> And I will tell you now, Mr. Stewart has been very cooperative with the government. I have sat down with him --more times with him than I've probably done with my own children in the last six months or so to discuss the cases and what's going on. We have taken a very big interest in this case.

*Id*.  However, to date, Perry has not received any separate 302s regarding these meetings other than a summary 302 dated August 18, 2016, and Perry has not received any FBI agent notes, transcripts, or any other documentation that provides any details about what Stewart stated to the Government over the course of an unknown number of substantial interviews between February 2013 and August 2016.

Indeed, the Government has provided Perry with more 302 reports detailing Stewart's attempt to smuggle drugs into St. Charles Parish prison through the unknowing assistance of the FBI than

of Stewart's cooperation in this case. For example, on June 10, 2016, Stewart was "interviewed at the New Orleans FBI field office in regards to the 39ers Federal RICO Indictment." (Exhibit E). Upon completion of the Interview, Stewart asked FBI agents if he would be allowed to obtain new tennis shoes from his mother. Subsequently, the shoes sent to Stewart contained marijuana that were hidden in the sole of the shoes. FBI found these drugs prior to Stewart receiving them and questioned Stewart about the drugs at his next interview with the Government on July 11, 2016. (Exhibit F). While the Government's questioning of Stewart regarding the drugs was documented in two separate 302s and provided to Perry, Perry has not been provided any separate documentation regarding the actual interviews Stewart had with the Government on June 10, 2016, and July 11, 2016, regarding the 39ers Federal RICO indictment.

The Government will likely take the position that it was sufficient to provide a summary 302 for three and a half years' worth of interviews between Stewart and the Government and that it does not have to produce the agents' notes or other documents in connection with the interviews pursuant to *United States v. Brown*, 303 F.3d 582, 593 (5th Cir. 2002). In *Brown*, the district court ordered *in camera* production of the notes and compared them to the government 302s. Upon review, the district court denied the defendant's production request for the notes finding that there were no discrepancies between the statements in the notes and the 302 that would have aided the defendant's defense. Following conviction, the defendant argued that he was entitled to the agents' notes under Jencks and/or *Brady*. The Fifth Circuit held that even if the district court's order denying production of the materials was in error, such error was harmless because of the district court's *in camera* comparison, which did not reveal any discrepancies.

*Brown* is distinguishable to this case. First, unlike *Brown*, there has been no production of the three and a half years of interview notes or an *in camera* comparison of the notes to the

summary 302. Second, the defendants have known for months that Stewart is the Government's star witness and that he continues, to the present date, to manipulate law enforcement and provide inconsistent statements to federal judges leading Perry to the conclusion that the notes contain discoverable information and should be produced. *United States v. Impastato*, 535 F. Supp. 2d 732, 738 (E.D. La. 2008) ("[A] defendant seeking merely an *in camera* inspection to determine whether a particular source contains *Brady* material 'need only make a plausible showing that the file will produce material evidence.'") *quoting United States v. Runyan,* 290 F.3d 223, 245 (5th Cir. 2002). Indeed, despite his statements that he has "come clean," Stewart has continued to lie about events charged in this indictment. For example, in relation to Counts 39-42, Stewart stated to one of his victim's (Gregory Keys) mother at his March 3, 2015 sentencing hearing in case 11-107 that he did not know Keys was in the vehicle the day he was shot.

> **Ms. Keys, I just want to let you know like
> I really didn't know Smokey was in the car, because, you know,
> Smokey was my partner**, like I messed with him, but it was just for
> Ken, I call Ken, I didn't know Smokey was in the car.
> And I wasn't the gun man. When they pulled up I just
> know -- I just know Ken was pulling up and I just told them when
> they pull up, you know, they just, you know, shoot Ken up. **But when
> I walked off and when we jumped in the car, you know, they told me
> that Smokey was in the car**, too, and that really, you know, I felt
> bad behind that because, you know, Smokey really is a good person,
> like. I really -- like that really wasn't for him. That was really
> made me mad when Ken lied to y'all and said like, you know, I was
> the shooter. I really wasn't the shooter. I set it up for Ken to
> get killed, but I really didn't, you know, pull the trigger on
> Smokey. If that was my gun and I had it, I'd never killed Smokey.

(Stewart Statement at March 3, 2015 Sentencing, attached as Exhibit G). However, Stewart lied to Keys' mother as he knew Keys was in the car. Stewart and his fellow cooperating witness,

Darryl Franklin, are both documented stating that Stewart knew Gregory Keys was in the vehicle with Smothers and orchestrated Key's death:

- "When it was learned that Keys was with Smothers, Stewart instructed Lewis to kill Keys…."  (Exhibit H).

- "Lewis was a block away on Congress Street, and informed Stewart that Smothers and Gregory Keys… had arrived on Congress Street…." (Exhibit I);

Additionally, as set forth above, in June 2016, Stewart attempted to manipulate FBI agents in an attempt to smuggle drugs into St. Charles Parish Prison.  Accordingly, Perry and the other defendants have made substantial showings throughout this case that Stewart's prior statements will produce material evidence in support of their defenses such that immediate production should be granted.  With all due respect to the Court, the undersigned prefers immediate production as opposed to *in camera* inspection because counsel for the defendants are familiar with Stewart's involvement in this case, which includes voluminous background information, and will be in a better position to identify inconsistent evidence in the notes than the Court.

The Government cannot and must not be allowed to escape its obligations to produce *Brady* and/or Jencks/*Giglio* information.  This is a grave injustice and not harmless error such that the trial should not commence until there is a resolution of this issue.   Accordingly, Perry requests the Court immediately compel the production of the documentation improperly withheld.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:      (504) 566-8646
Facsimile:      (504) 585-6946
Email:            kjmiller@bakerdonelson.com
***Counsel for Defendant, Jasmine Perry***


## <u>CERTIFICATE OF SERVICE</u>

 **I HEREBY CERTIFY** that on this 2nd day of September, 2016, I electronically filed the foregoing pleadings using CM/ECF, which will send a notice of the electronic filing to all counsel of record.

     /s/*Kerry J. Miller*
     **KERRY J. MILLER**